The next case today is John Doe v. Stephen W. Tompkins, et al., Appeal Number 191368. Attorney Lee. Good morning, Your Honors. Huy Le, appearing on behalf of the Federal Appellants in this case. I respectfully request to reserve two minutes for rebuttal. You may have it. Thank you, Your Honor, and may it please the Court. In accordance with decades of Supreme Court precedent, this Court should vacate the decision of the District Court and should hold that the existing procedures governing bond hearings under Section 1226A, including the requirement that aliens bear the burden of proof, are fully consistent with the Due Process Clause of the Constitution. This case turns on context. This case isn't about criminal pretrial detention. It isn't about permanent civil commitment, nor is it about the length of detention. This case is about temporary detention during removal proceedings. In every case that has considered the issue, the Supreme Court has affirmed the constitutionality of detention incident to removal proceedings. Indeed, the Supreme Court has routinely upheld mechanisms implemented by the AG's discretion, even where individual's flight and dangerousness is categorically presumed or there's no individualized bond hearing at all. In doing so, the Supreme Court has never placed the burden of proof on the government to justify continued detention at a bond hearing. This confuses me, and the brief confused me, too. You talk about decades of Supreme Court precedent, and the Supreme Court has done this and done this. I've read the cases, and a number of them are interpreting the statute and deciding what the statute does or does not, and expressly reserving the constitutional issue. Where has the Supreme Court ever held that the government can detain an alien for a prolonged period of time without having to prove anything? Well, Your Honor, to address that question, this case isn't about prolonged detention, rather, it's about temporary detention and the initial months. Let's assume that most people would consider being in a prison for many months on end to be sufficiently long enough that they would think their due process rights might be implicated. I ask you again, in these decades of Supreme Court precedent, has the Supreme Court ever said that the government can grab someone off the street, detain them for months on end without having to prove anything? Well, Your Honor, the court, for example, in DeMoore, affirmed a due process analysis under Section 1226C and upheld that the government could require criminal aliens to be held during removed proceedings without individualized determinations. And then the court held, in Carlson, affirming the denial of bail was permissible in reference to the legislative scheme in that context. Five minutes remaining. Thank you. And in Flores, the Supreme Court again rejected the aliens' contention to the procedural system of releasing them to non-custodial parents. So again... Counsel, we do have cases where, on the basis of substantial legislative findings, Congress has enacted statutes which might categorically treat certain individuals who've been, on And even with respect to 1226C, you have some legislative findings that support that framework there. I mean, what legislative findings do we have here in the context of 1226A that suggests that the bond hearings have to be conducted in a certain way in order to advance the legislative concerns? Are there any such legislative findings? Well, just... Yes, Your Honor. To address the statute itself, the statute commits the detention under 1226A to the discretion of the Attorney General. And in exercising that discretion, the Attorney General promulgates regulations and issues board decisions to create the bond scheme that is in place today. May I ask you about this? I'm just... You know, the District Court skipped over two different claims that were made. One was that this was contrary to the Congressional intent in the statute. Essentially, ERIRA was concerned with subcategory C aliens, aggravated felons. There's a category of about five. But chose not to change the law at all as to subcategory A. And yet the agency goes and promulgates regulation that has to do with immigration officers. And then the agency extends that in a decision reversing Patel. And, you know, I'm left wondering whether that reversal of Patel actually is in accord with what Congress intended. And so you look at the history and the reason for the regs seems to be that there was a non-criminal aliens, but the Congress doesn't refer to that. The Congressional findings have to do with 1226C. So like Judge Lopez, I'm wondering here what the agency thought it was doing in the absence of any such findings. Yes, Your Honor. And in the 90s, in an enacting 1226A, the Congress intent was to continue to commit those discretionary determinations, including implementing bond procedures on the Attorney General. Yes, but at the time, the Attorney General had exercised the discretion under Patel to put the burden on the government. And then all of a sudden in legislation that has to do with a different category of aliens, the agency decides it's going to do an about face and put the burden on the immigrant. Yes, Your Honor. And there is a legislative history and as well that there's reference in the notice and comment when promulgating these regulations in 1997 and onwards into 99. And specifically, as cited in the government's brief at Page. Yeah, I know that. We've just referred to that. Yes, Your Honor, the regulation, the notice. Go ahead. Thank you, Your Honor. It addresses research and reports and comments that they have received about the criticism about INS's failure to remove non-detained, excuse me, non-criminal aliens as well. And the House reports, as alluded to, also references similar general concerns about aliens, a failure to remove aliens in general, as cited in the government's brief. And I'll reserve, I'll answer any more questions. Yeah, I have another question. In the prior case, the government was willing to concede that even in the face of mandatory detention, if there were prolonged periods of detention, that there had to be a bail hearing or reasonableness determination. Is the government taking the same position as to prolonged detentions for these particular plaintiffs? Well, Your Honor, for the structure of this case, prolonged detention would depend on the fact and circumstances specific to each individual case. And it may vary from case to case, the reasons for that detention. And that's just a different procedural posture and arises in a different claim here. Here, the district court issued an order that applies to individuals at the outset of detention, where individuals have just been detained for a short period. For instance, like the petitioner in this case, Mr. Doe, was detained for, I believe, less than two months when he was afforded this. So it would depend on the facts and circumstances, which are not before the court. So as I read most of the circuit court opinions, they are about prolonged periods of detention. But, you know, and most of them are concerned with C, where Congress mandated detention. Congress doesn't mandate detention here. So I'm wondering whether the period of time is to be calculated differently or thought of differently in due process terms. Well, not necessarily, Your Honor. As alluded to here again, the district court's order applies to individuals who are afforded initial bond determinations. And of course, these individuals may have been detained for a short period of time. And in that sense, the attorney general's discretion is, again, for the purposes of preventing individuals from fleeing or committing a crime. And with that respect, the length of detention at the outset wouldn't be. No, but I think what you're suggesting is if somebody feels they've been detained unreasonably long, they have a habeas remedy to get an instruction to an immigration judge to have the hearing. Is that is that basically it? Well, I don't necessarily think that's true. They have various levels of review for their bond hearing, yes. And as the government briefed first, the DHS officer makes a determination as to whether the individual is eligible for a lease. And if so, under what conditions and under what amount. And then, yeah, but just please go ahead, Judge Lynch, go ahead. All of that process takes a very long time. And in the meantime, the alien is sitting in detention somewhere, even though Congress hasn't mandated detention. And this is all a matter of the attorney general's discretion. What I'm asking is, let's assume there is a viable case that the detention is too long. The agency is doing its process, but it hasn't finished yet. It's no fault of the alien that it's taking so long. After all, they're merely exercising their statutory rights. Are you saying that under those circumstances, they should be going to a habeas court to get an order that they have to be given a hearing? No, Your Honor, the government is saying that that's not an issue in this case. There were no prolonged analysis. Excuse me, there was no prolonged allegations before the district court. Yes, I understand that. But I'd like you to answer the question anyway, because surely the government is faced, perhaps not in this case, but with a prolonged detention of subcategory A people. It would vary from case to case. But yes, the individual does have the option to submit a habeas petition. I just want to really follow up on an observation that Judge Chiara was making. This focus on prolonged detention in this 1226A context sort of puzzles me. I mean, if the purpose of detention is to assure that individuals who are now caught up in removal proceedings will be here to complete the removal proceedings and to be removed, if that's the outcome. I mean, if that's the purpose, I don't understand why, if at the very outset of the proceedings at an initial hearing, an analysis can be done that concludes that somebody is not a risk of flight, they're not a danger to the community, so that they're, from the very outset, there is no reason to detain them. I mean, I don't understand why it doesn't follow that due process would require that the kind of procedures that the district court said should be in, at least in part, should be in place here. I'm talking particularly about the burden of proof. I don't understand why it doesn't make perfect sense to impose upon the government the burden of establishing the conditions that would justify continuing detention. And moreover, can you think of another context where the government seeks to detain individuals and does not then have the burden of establishing the conditions that would justify that continuing detention? So that's really a two-part question, but I would appreciate your response to both. Yes, Your Honor. And to address the detention at the outset, of course, Congress has eliminated the presumption of release as the Flores and Carlson case has identified. And then with respect to immigration detention, it falls within the sphere of what courts have long recognized as the government's unique authority of sovereign interests. And as to the practical matter, as to placing the burden of proof on the detainee, it would indeed make sense because it would provide the immigration judge's decision within a full and informative hearing. For instance, the detainee is in the best position to provide IJs with relevant bond factors. Specifically, the detainee would have personalized knowledge about whether the individual has a fixed address, whether the individual's length in the United States, the individual's family ties, employment history. These are all discretionary bond factors that the board has implemented and that IJs consider. And indeed, these individuals have direct knowledge to present to the immigration judge, as the individual did in this case. So, Your description seems to be blind to the realities of the immigration process in that the vast majority of detainees are unrepresented. They often have language barriers. Your suggestion that they are in an ideal position to meet whatever burden of proof is imposed upon them seems to be, suggests an unawareness of the realities of the immigration process. Well, Your Honor, again, the Supreme Court has ruled that, first of all, that Congress may make rules that don't necessarily, that if applied to citizens, may make rules to aliens that may not be applicable to, say, citizens. However, with respect to individuals' representation or language barriers, those of course are not an issue and not a challenge. There are regulations or other procedures in place to provide individuals with a list of attorneys or provide them with interpreters. However, looking at this case, Your Honor, this case, this individual was represented and was able to provide evidence relating to his family ties, his length in the U.S. and citing the individual's own statistics that from a brief from a study, it was found on brief on page 30, which is a survey of proceedings from 2001 to 2016. This survey represented 81 percent of individuals had counsel. So these particularities aren't at issue before the court today. What is at issue is the AG's discretion in setting up these bond procedures and these bond procedures, multiple with ample procedure protections and layered review with the DHS officer, with the IJ, with the BIA, and then if there's a material change of circumstance, again, there. So that the government submits that these procedures are fully consistent with due process clause.  Thank you. Thank you, Your Honor. You know, we have an amicus brief from the immigration judges who say whatever happened in the past, things are very different now and judges are being pressured to with overwhelming dockets. They can't have the time to pay attention as needed. The number of unrepresented people is going up and under those circumstances, the allocation of the burden to the alien is more problematic now as a result of other it was, say, at the time DeMoore was decided. Do you have any comment on that? No, with respect to the amicus briefs' characterization of the posture of this case. The posture of this case, again, Your Honor, this individual, Mr. DeMoore was provided to him under the regulations and was able to submit ample evidence and provide with an informal hearing where he can make his case for bond. And it doesn't represent that this case that he was deprived of those opportunities. Okay. Once again, it sounds like you're coming back to, well, maybe it could be true in an individualized situation, but it's simply not true in this case that any of these concerns arise. It's not before the court. That's correct, Your Honor. Okay. Thank you. Thank you. Attorney Holper. Good morning, Your Honor. May it please the court. Mary Holper for Petitioner Appellate John Doe. This case is about default rules in 1226A bond hearings and default presumptions and whether the government must justify detention that may become prolonged to an immigration judge. The district court was correct in requiring the burden of proof to shift back to the government as it was before the anomaly in Adoniji in 1226A bond hearings. So first, there are two reasons. First is that the default rule is freedom. There is no reason to depart from this well-established general rule that when the Supreme Court has said we cannot do and that is look at these aliens as though they were criminal defendants in a bail proceeding or something similar. But the Supreme Court seems to have flatly precluded that analysis. It may be that under Matthews, there is a different argument available. But before you get to the Matthews issues, you wrote a law review article some time ago saying this is not at all what Congress intended as to 1226A, but the district court skipped over both the statutory interpretation and the APA and immediately went to the due process ruling. And since you won on the due process ruling, I can understand why that's your interest on appeal. But I'm a bit troubled by all of that if, in fact, there are decent arguments that this is really not what Congress intended. So first, comment on that and then get to why you think the Matthews, assuming Matthews applies, why there are concerns under Matthews that need to be set out from the very beginning. Yes, Your Honor. And it's important to note the history here just because the government is presuming that Congress did not do that. No, no, no, no, no, no. That's not their argument. Their argument is in the course of amending 1226C, they allowed the attorney general to continue to have discretion. And when you look at the legislative history, Congress was concerned about more than just the aggravated felons. It was also concerned about other aliens who didn't show up for detention for their hearings or if the hearings weren't going well, they didn't show up for removal. That's really the government's position here. OK? Yes, yes. And the government, I know the regulation that the government discusses from 1997 alludes to the study from the Office of Inspector General that has this 86 percent flight risk rate. Now, that was for people with final orders of removal who had already been there. They had a significantly higher flight risk. And that was, of course, the first time these statistics about detention and about what happened in that context were brought to the public's attention. And so what happened was that INS focused on and most of the legislative history is about flight risk and future crimes committed by the quote unquote criminal aliens. And so that was what caused Congress to write 1226C. And the understanding was for that very brief period of time that the D'Amour court upheld 1226C because Congress could make those special rules. There is no such special rule with 1226A. This is the generally applicable bond statute that applies to lawful permanent residents, refugees, asylum seekers, people who might be citizens, anyone who the government thinks is deportable. And often the bond hearing happens before that determination of deportability has even happened. So the government may not even prevail on whether this person is actually a non-citizen subject to deportation. And that generally applicable statute in 1226A then should follow the general rule about civil detention, which is that when the government seeks to take away liberty, the government should do some justification. Well, counsel, just to understand the sequence here, I mean, I thought with all this problem with respect to criminal aliens, which led to 1226C, the regime that was in place with respect to non-criminal aliens, the initial hearing that would take place, Congress didn't change anything with respect to that. And you had in place at that time, you had the regime in place, placed the burden on the government to establish all the factors that would require detention. So, I mean, I guess in kind of a traditional sort of legislative history argument, Congress is background law was that the government bears the burden at the outset. I mean, I get that that's, you know, the government saying these are all the things that Congress wanted. Well, the response to that is, well, if you want to try to understand what Congress had in mind, if you apply that traditional principle that Congress adopts laws with an awareness of the background law, the argument would be that Congress was fully content with the regime that was in place. Isn't that perhaps your best argument with respect to what Congress wanted? Yes, Your Honor, that is exactly correct. And more minutes remaining. Thank you. And Congress didn't shift anything other than to change the minimum statutory bond requirement and to place it in a different statute, a different statutory section with 1226A. And I want to get as well to the I mean, certainly the question about DeMoor and Carlson we've raised in our brief. Those were separate detention statutes, separate detention policy, and Carlson that had to do with the deportability of people who were communists and Congress and the attorney general was allowed to reference the legislative scheme. And and the other thing is that Carlson, actually, the Supreme Court said purpose to injure could not be imputed to all aliens subject to deportation. So for that reason, the in Carlson, the court held that with the 1950 act, the Congress intended to place discretion with the attorney general and his delegates to decide bail because prior to that, many court or several courts of appeals had thought that the attorney general and his delegates had no discretion to deny bail. Now we know. And so one of the arguments that the government makes is about we're interfering with the judge's discretion. This does not interfere with the judge's discretion. Discretion should be bound by procedural rules and constitutionally adequate procedural rules. And certainly if after a constitutionally adequate bond hearing where the government bears the burden of proof, if the detainee comes back and says, I didn't like the judge's decision, I think that that didn't meet the government's standard of proof that detainee would lose under 1226 E because the federal court doesn't have jurisdiction to review the immigration judge's discretion. So this is different. It is it is Congress making a separate set of rules as applicable to immigration bond hearings. But that set of rules had to do with no discretionary review, no court appointed counsel and and and the like and no speedy trial act that would apply in Salerno. But the but all of that civil detention case law about the foundation, which is that the government has to justify detention should apply here. That's what Zadvydas said, is that that does apply in the immigration context. And Zadvydas was looking at a regulation that looked exactly like the regulation in the 1226 A context, except for it was in the final order of removal context. And there the court held that regulation that places the burden on the detainee is constitutionally problematic and cited to the civil detention case law, saying that protections of property would get more process than this important question about liberty. Now, under the Matthews v. Burden of Proof are inadequate to protect the important liberty interest at stake. This is the most significant liberty interest there is being free from detention. And there is a risk of erroneous bond denials where detainees are forced to justify their detention. His case looks a lot like Mr. Velasco Lopez case in the Second Circuit, where ICE repeatedly did not bring him to court so that the evidence against him from the criminal court remained uncertain. And so that allocation of the burden of proof meant he could not prove that negative. And also, this is the one and only bond hearing somebody has before they're about to suffer prolonged detention. We know that detention statistics look different now than they did in McMore. We know that detention links are really more similar to a year. And this one bond hearing is it. After that, the only opportunity is if there is a material change in circumstances that a detainee must prove. So so the even though Mr. Doe was only in detention for two months, which is a long time, and five months by the time he got the correct bond hearing, he it's still he still was facing a long time in detention. And and with respect to the interest of the government, this is just like Santosky v. Kramer. This doesn't add additional costs to the time. Thank you. And so we respectfully request that the that this court affirm the district court under either the Matthews v. Eldridge procedural due process test or the generally applicable rule about the government's burden in detention. OK, I want to ask you about your brother's assertion that the alien is actually in the very best position to know. And after all, most of these aliens have been here a while, sometimes five years, so on before they're picked up. And they're usually picked up because of some sort of infraction, not sufficient to make them aggravated criminals subject to mandatory detention. So in some ways, they're on notice that they may well be picked up. And if they want to avoid detention, they're going to have to show before they are detained. They know that they're going to have to show once they are detained that they're not a danger to the community. I understand if you've never had the idea and you've been locked up for a year or so, it becomes very hard for you if you don't have counsel. But a number of them do have counsel. And the government is saying, you know, they're in the best position. They have the evidence. We don't. All we know is they got picked up and then we run the criminal databases. And so why should the burden shift to the government if it is true that the aliens actually have better knowledge of their own circumstances? Well, the first things that an immigration judge looks at in a bond hearing are the criminal records and any immigration records. And those are at the government's fingertips and often very difficult for a detainee to get. And they don't usually just have them in a file cabinet somewhere at home. And so I'm sorry, they don't know that they've been picked up for criminal offenses. They don't know they have criminal charges against them. Is that what you're saying? No, what they don't typically have are the documents related to them on their persons at home so that they're easily accessible. What does that have to do with their proof that they are not dangerous and they're not a flight risk? Well, it's just that the government, the judge has to consider dangerousness first. So the first thing that every immigration judge wants to know about is the criminal history. OK, so that happens. But why does that mean that the burden then shifts to the government? As you say, it's virtually automatic that those documents are going to be before the immigration judge. Yes, but the government does that now without having the burden. Correct. Correct. And the other thing, too, is that the government has unique access to the alien file, which the detainee can only get through a Freedom of Information Act request. And you usually can't get the response back in time. I'm sorry. They don't know how long they've been in the country illegally. Please. No, no, no. What I'm saying is that they have other documents relevant to the fact that they might have a petition that's pending before the Immigration Service that would give them an application for relief in immigration court. And therefore, they would be able to show that they're not that they are not a flight risk because there's some valid immigration immigration case pending. So, for example, Mr. Doe had a had a filed I-360 special immigrant juvenile status petition. So something like that would be not always in the thing at the fingertips of the detainee, but always in the government's file. So putting it. But you've just said that that is almost automatically produced. So when we're talking about who has the burden, it isn't about those documents which are routinely provided. It is about other information. And what matters to hear is also the burden, the standard of proof, because it's what burden of production is one thing and then burden of the actual burden of persuasion is another question. And here the burden of persuasion, the district court put a lower burden of persuasion on the government, which was to the satisfaction of the immigration judge. In this case, the district court didn't apply the clear and convincing evidence standard. But I think the harder question then is what standard of proof does the government have to meet beyond its initial initial burden of producing documents? OK, and that's where we would that's where it is our position that the government has to do more. And, you know, in this case, the government only had to meet what is essentially a preponderance of the evidence standard, which looks just like but but it was the government that had to meet it as opposed to the detainee having to meet it. And with that, with that burden shift at the new bond hearing that Mr. Doe had, the the judge held that the government could not meet that. And so the burden of persuasion does matter, even if the government comes forward with all the pieces of paper and the burden of production. OK, thank you. It's that's been helpful. Just one other thing. You say that it's now fairly common that it's a year before there is a final adjudication of applications for relief. But how long is it before there is a bond hearing? The bond hearing can happen whenever the detainee is ready to ask for a bond hearing. So, OK, so outset or it could happen further into detention. OK, but are there any statistics that have been put into this record? OK, a large amount of the argument has turned on how very long it takes. But I actually don't know if it is very long to a bond hearing or whether that is longer now than it was, for example, when DeMoor was decided. I don't know. There's no statistics in this record as to how long before there is a bond hearing that happens. In Mr. Doe's case, he was arrested in August and he had his bond hearing in October. So it was two months later that he had his bond hearing. So in this case, unlike the 1236 C case, everyone's more or less on the same page that you do get a timely bond hearing. The question is, what is the cost of an erroneous decision at that bond hearing? And that will be how long the average length of detention is. So I get a bond hearing. I could have one one month in or. But if I should be released and because of the burdens, I'm not, I'm not going to  Correct, Your Honor. And that the BIA, of course, is part of a system of administrative appeals. How often does the BIA reverse the denial of bond? I don't know exactly. I don't have those statistics, Your Honor. Sometimes the BIA's bond, the bond appeal becomes moot because of decisions made or what happens in the removal case below if the person is no longer in 1226 C custody, for example. Right. Counsel, just one quick question, just based on your experience. One of the amicus briefs makes the observation, there's a certain irony here that the more meritorious a defense might be to removal, the more likely it is that the we're talking about a situation where somebody is detained, the likelihood is that the detention will be prolonged because there is more, just more to fuss about, more to fight about, more to argue that you should not be removed. Does that? That's correct. Does that conform to your experience as well? Yes, Your Honor. In fact, even if there's a more meritorious claim that has more witnesses, for example, that would probably take more than one day to complete that hearing because of the time scheduling that the immigration judges use for a three hour hearing. So Mr. Doe, for example, had his removal case and his asylum case continued over two days. I've had other clients where it was continued, but with a separation of a month. So the stronger the case, the more evidence that one has to present in the defense. That means detention will be longer. And then, of course, there are more issues on appeal after the BIA generates the transcript. So the whole process can take much longer. And also sometimes, and this often happens with my cases, that when the cases are very close, the immigration judge needs to take some time to think about it and so then takes it under advisement. And, you know, sometimes that can take a month to get an answer back. Sometimes I've had it take up until four months to get an answer back from an immigration judge about whether this case, which is a close call, you know, meets all of the requirements for cancellation of removal or asylum or withholding or whatever the form of relief is. How often does the BIA, as to the first, the grant of relief and the government appeals, how often does the BIA uphold the government's appeal? And then the other side of it, where the alien loses, but the BIA reviews it and either vacates or reverses. Do you happen to know, are there statistics on this? You know, I don't have statistics at my fingertips. I don't know if this is something that the Syracuse track, they have lots of statistics if there is something on that particular question. But no, I don't know off the top of my head what the rate of reversal by the BIA is or how often the government takes appeals in these contexts. OK, thank you. One question for you, and maybe Mr. Lee might address it, too, when I remand. To what extent is the likelihood of success in the removal proceedings themselves factored into the bond decisions? For example, if someone gets a favorable decision on withholding of removal from an IJ, are they still kept detained? I think some of them are, right? Yes, they are still detained if the government takes an appeal. So the whatever bond decision was made earlier on is then continues unless the unless there's an argument that there's a material change in circumstances. But typically the the strength of the relief from removal, the judges determine it really only goes to flight risk and not to dangerousness. And so if a judge has already decided that there is a dangerousness finding, then that wouldn't be a material change in circumstance. So, yes, the answer to your question is immigration judges do often and always look at the strength of relief from removal in the underlying proceedings because it gives somebody an incentive to come back. If there's actually relief from removal, the stronger that relief from removal is, the stronger the person has as an incentive to come back. So what happens if they're out on bond and they then lose their proceeding on credibility issues before the IJ? Are they brought back into detention? I mean, it's possible that's what 1226B says is that the government can detain and they there was a board case many years ago that seemed to suggest that there had to be at least some material change in circumstance for the government to take somebody into custody. But that authority under 1226B is pretty sweeping. That does allow the government to then take someone back into custody who they now think is a danger or a flight risk. And they don't have to justify that to the immigration court first. They can just take custody. And then the person has an opportunity for a new bond hearing. In fact, that's what happened to Mr. Pensamiento. He in the district court's decision, he had been released on bond and then the court, then the government re-detained him. And then at his bond hearing, that was where he argued that he should not have had to bear the burden of proof. OK. Thank you. It's been very helpful to get all of this information and take advantage of your expertise. Thank you, Your Honor. We'll hear from your opponent who has reserved two minutes. Thank you, Your Honor. I just want to start off by the, it was cited that the Zabardas case from the Supreme Court as supporting the petitioner's argument. I just want to briefly talk about that case. That case fell related to an individual with a final order of removal. And the individual was the receiving country who had taken back for various reasons. So he was facing indefinite and potentially permanent detention. And even in the face of this, submitting a due process challenge, the Supreme Court still required this individual to first, at the outset, prove that there is no significant likelihood of removal in the foreseeable future. And then and only then would it be, would it come back, would the burden go to the government to submit evidence otherwise. And addressing the regulations and the Attorney General's discretion, again, the Congress has provided broad discretion to the Attorney General under 1226A to promulgate regulations. And just to cite from the Supreme Court's decision in Carlson, which states that there are no specific standards for each subsidiary executive action in carrying out the policy. And since then, there have been statutes that came out that specifically tasked with the Attorney General making these types of decisions. And here, the burden of proof, as promulgated by other regulations through the statutorily authorized discretion, is consistent with due process and provides ample protection for detainees. I have a question. Under Matthews, we seem to be focusing on the risk of an erroneous decision, perhaps less based on who has a burden of production, but the nature of the burden of persuasion. Do you have anything to say about that? Well, Your Honor, again, the individuals provided quite ample protections under 1226A. And with bond hearings in immigration proceedings specifically, given the uniqueness, there's no rules of evidence. So the individual is able to provide a variety of evidence to prove his or her case for bond procedures so that the IJ can make an informed decision. And, of course, it would make sense then that the burden remains on the individual because the individual is in the best position for a lot of these evidence that an IJ would consider one way or the other. And I realize I'm out of time, Your Honor, so if I could just have just a moment. Go ahead. And we're assuming that the Supreme Court precedent doesn't resolve this issue. And Matthews' analysis is indeed required on balance, given the Supreme Court has consistently affirmed the government's valid and legitimate interest in detaining aliens during removed proceedings. And in light of the numerous protections already afforded to individuals and the government's unique and sovereign interests, the government, again, submits that maintain the burden of proof is fully consistent with due process clause. And the government respectfully requests that the district court's decision be vacated. Thank you, Ramos. Thank you. Appreciate the argument. That concludes argument in this case.